UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
Gaetano DiGirolamo,

                              Plaintiff,

     -against-

Drug Enforcement Administration,

                            Defendant.
------------------------------------------------------------X

1:15-cv-5737

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., District Judge:**

*Pro se* Plaintiff Gaetano DiGirolamo brings this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking an order directing Defendant Drug Enforcement Administration ("DEA") to release to him certain documents he believes that the DEA has wrongfully withheld. The DEA has renewed its motion for summary judgment. For the reasons set forth below, the DEA's motion is GRANTED.

## BACKGROUND

DiGirolamo is currently incarcerated, serving a life sentence after his 1993 conviction by a jury for heroin trafficking. He was arrested in 1991 in a government sting operation targeting heroin distribution after he had arranged for a confidential informant to conduct a drug deal with Louis Salerno. *See United States v. Salerno*, 66 F.3d 544, 546 (2d Cir. 1995).

DiGirolamo is no stranger to FOIA litigation. In prison, he submitted FOIA requests to the DEA, seeking documents pertaining to the investigation that led to his conviction. *See, e.g.*, Am. Myrick Decl. Ex. C at 1. In response, the DEA released certain materials with redactions, an audio tape, and withheld other materials. *See* Byars Decl. Ex. C at 2-3. DiGirolamo sued for full disclosure in the District of Columbia, and the district court affirmed the DEA's redactions

1

and withholdings based on certain invoked Exemptions. *See DiGirolamo v. Reno*, No. 95-0180 (HHG) (D.D.C. Sept. 17, 1998) (Memorandum).[1]

On July 31, 2014, DiGirolamo made his first request, seeking the release of certain DEA records containing information about himself. Am. Myrick Decl. Ex. A. The records sought included arrest reports, investigative reports, evidentiary and/or scientific reports, media, and statements made by individuals. *Id.* at 2. After an initial response letter, the DEA informed DiGirolamo in a second letter that it had preliminarily identified thirty-three responsive files, that the total fee would be $3,696.00, and that payment would be needed before any further processing. Am. Myrick Decl. Ex. C at 1.

DiGirolamo followed up with three letters to the DEA over the next two months, amending his first request. On September 4, 2014, DiGirolamo requested "any and all other material [] information" regarding three individuals—Sialek Jan ("Jan"), Hizbullah Khan ("Khan"), and Lucy DiGirolamo ("Lucy"). Am. Myrick Decl. Ex. D. The type of information sought after, like DiGirolamo's original request, included arrest reports, investigative reports, evidentiary and/or scientific reports, media, and statements made by individuals. *Id.* at 2. DiGirolamo also included a privacy waiver for Lucy DiGirolamo. *Id.* at 2. DiGirolamo gave a number of reasons why disclosure was warranted in the case of Jan and Khan that mainly centered on claims of government misconduct, specifically the illegal importation of heroin by the DEA. In the case of Jan, DiGirolamo argued that the public should know about Jan's alleged disappearance from federal custody and alleged service as a DEA informant. *Id.* at 6-7. In the case of Khan, DiGirolamo argued that release would show that he was wrongfully convicted because the Government allegedly could not produce Khan at his criminal trial. *Id.* at 14. With

---

[1] Byars Decl. Ex. A.

regards to Lucy, on September 8, 2014, DiGirolamo narrowed the time period of his request for records relating to Lucy from January 1, 1978 to January 1, 1984. Am. Myrick Decl. Ex. E at 2. In the September 8, 2014 letter, DiGirolamo also requested a fee waiver based on his earlier assertions of government misconduct. *Id.*

In response to DiGirolamo's amended request, in early November, the DEA asked for proof of death or a privacy waiver from Khan and Jan in order to begin processing the request. Am. Myrick Decl. Ex. G at 1. The DEA explained that proof of death must consist of a notarized death certificate, obituary, or a recognized reference source. *Id.* at 1. The DEA also made a *Glomar* response, stating that it could neither confirm nor deny the existence of such records relating to Khan and Jan due to privacy concerns. *Id.* at 2. The DEA also stated that it would start processing DiGirolamo's request for records about Lucy due to the signed privacy waiver. *Id.*

On November 18, 2014, DiGirolamo appealed the DEA's response regarding his request for records about Khan and Jan. Am. Myrick Decl. Ex. I. DiGirolamo challenged the DEA's invocation of FOIA Exemptions 6, 7(C), 7(D), and 7(F) to justify its *Glomar* response. *Id.* at 3. Additionally, DiGirolamo attached a newspaper article stating that a United Arab Emirates court sentenced a drug trafficker named Hizbullah Khan bin Nasrullah Khan, presumably Khan, to death. *Id.* at Exhibit F. On March 2, 2015, the Office of Information Policy ("OIP") affirmed the DEA's *Glomar* response and explained that "[w]ithout consent, proof of death, official acknowledgement of an investigation, or an overriding public interest, confirming and denying the existence of such records" with regards to those two individuals would constitute an unwarranted invasion of personal privacy. Am. Myrick Decl. Ex. J. at 1. The OIP notified DiGirolamo of his right to sue in federal court. *Id.*

3

Soon thereafter, the DEA reported to DiGirolamo that it had identified four files potentially responsive to DiGirolamo's request for records about Lucy. Am. Myrick Decl. Ex. K. One file was destroyed and the other contained no responsive records. Because DiGirolamo's free search time had been exhausted, the DEA explained that it would not proceed further until DiGirolamo responded to the notice of the anticipated $224.00 fee. *Id.* at 1-2. DiGirolamo did not respond to the letter.

On September 23, 2014, the DEA released certain records pertaining to DiGirolamo, enclosing thirty-six pages from that file, twenty-eight of which were partially redacted and eight of which were withheld in full. Am. Myrick Decl. Ex. L at 3. The DEA also told DiGirolamo that he had exhausted his free search time and that his fee waiver request had been denied. *Id.* DiGirolamo administratively appealed the DEA's redactions and withholdings. Am. Myrick Decl. Ex. M.

DiGirolamo filed his complaint in this action on July 21, 2015. As part of its litigation review and prior to the DEA's filing of its first summary judgment motion, the DEA reprocessed the records and released to DiGirolamo with certain redactions removed on May 26, 2016. Am. Myrick Decl. Ex. P. On May 27, 2016, the DEA filed its first summary judgment motion, asserting that it had properly responded to DiGirolamo's request for records about himself, properly issued a *Glomar* response with regards to Khan and Jan, and did not need to respond further regarding Lucy due to DiGirolamo's failure to exhaust that claim. On July 22, 2016, DiGirolamo filed his opposition, which was comprised of (1) an opposition memorandum, (2) approximately 70 pages of affidavits dating from 1996 to 1999, and (3) approximately 200 pages of exhibits consisting largely of purported DEA records of unclear origin. *See* ECF Nos. 34-36. Because DiGirolamo's opposition showed that Khan and Jan had been prosecuted for narcotics

offenses some twenty to twenty-five years ago, the DEA withdrew its *Glomar* response and reviewed DiGirolamo's submission to determine if an overriding public interest supported disclosure of any responsive records about Khan and Jan and whether the public domain or waiver doctrine applied. *See* Myrick Decl. ¶¶ 58-62. The DEA concluded that categorical withholding under Exemptions 6 and 7(C) was appropriate, and that DiGirolamo failed to meet his burden under the public domain or waiver doctrine. *See* ECF No. 42-1. In a letter dated December 7, 2016, DiGirolamo provided no additional information regarding Jan and Khan and also identified seventeen exhibits in his earlier opposition that "were official government documents pertaining to both third party subjects." ECF No. 46 at 2. After reviewing the opposition filings once more and finding no reason to change its position, *see* Am. Myrick Decl. ¶¶ 65-69, the DEA renewed its motion for summary judgment.

With its motion, the DEA submitted an affidavit by Katherine L. Myrick, who oversees the processing of requests to the DEA under FOIA as well as the review and release of DEA records responsive to FOIA requests. Am. Myrick Decl. ¶¶ 1-2. She explained in her declaration the application of the claimed exemptions, *see id.* ¶¶ 31-42, and specified the particular withholdings and redactions on a document-by-document basis. *See id.* ¶¶ 43-56.

## STANDARD OF REVIEW

Summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321-23 (1986). Generally, FOIA actions are resolved through summary judgment procedures. *See, e.g., Families for Freedom v. U.S. Customs and Border Protection*, 797 F. Supp. 2d 375, 385 (S.D.N.Y. 2011). FOIA expressly provides for *de novo*

review by a district court of an agency's decision to withhold documents. 5 U.S.C. § 552(a)(4)(B); *A.C.L.U. v. U.S. Dep't of Justice*, 229 F. Supp. 3d 259, 264 (S.D.N.Y. 2017).

A federal agency responding to a FOIA request must (1) conduct an adequate search using reasonable efforts, (2) provide the information requested, unless it falls within a FOIA Exemption, and (3) provide any information that can be reasonably segregated from the exempt information. *Gelb v. Federal Reserve Bank of N.Y.*, 1:12-cv-04880, 2014 WL 4402205, at *3 (S.D.N.Y. Sept. 5, 2014) (citing 5 U.S.C. §§ 552(a)(3), 552(b)). To prevail on a summary judgment motion, the agency has the burden of proving "that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). The burden is met when the agency provides "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption." *Id.* To prevail on summary judgment on the basis of agency affidavits, the affidavits must "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). Finally, "an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Id.* (quoting *Larson v. Dep't of State*, 565 F.3d at 862).

## DISCUSSION

I.  DiGirolamo's Request for Release of Records Relating to Himself

Regarding the redactions and withholdings of records relating to DiGirolamo, the DEA invoked the following exemptions: FOIA Exemptions 7(C), 7(D), 7(E), or 7(F) and/or Privacy Act Exemption (j)(2). Exemption 7 exempts from disclosure those "records or information compiled for law enforcement purposes," the release of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy" 7(C), "could reasonably be expected to disclose the identity of a confidential source" 7(D), "would disclose techniques and procedures for law enforcement investigations or prosecutions" 7(E), and "could reasonably be expected to endanger the life or physical safety of any individual" 7(F). 5 U.S.C. § 552(b)(7).

As a threshold issue, the nature of DiGirolamo's FOIA requests implicates Exemption 7. DiGirolamo requested investigative reports. *See, e.g.*, Am. Myrick Decl. Ex. A at 2 and Ex. D at 3. In addition, the records also consist of DEA reports, cables, an internal memorandum, and include material provided by coded confidential sources, all regarding an investigation into international heroin trafficking that led to DiGirolamo's arrest and conviction. Myrick Decl. ¶¶ 33, 35. Thus, the records meet the threshold for Exemption 7 as being compiled for a law enforcement purpose.

A. *Exemption 7(C)*

Exemption 7(C) requires a court to "balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect." *Associated Press v. U.S. Dep't of Defense*, 554 F.3d 274, 284 (2d Cir. 2009) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 776 (1989)). At the first step of the balancing inquiry, a court must identify the private interest being implicated. *Id.* Next, a court weighs this interest

7

against the only interest that matters, *i.e.* opening up "agency action to the light of public scrutiny." *Id.* at 285 (quoting *Reporters Comm.*, 489 U.S. at 772). The requester has the burden of establishing that disclosure would advance the public interest. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

If the requester asserts that the public interest will be served by disclosure because it will uncover government misconduct, then "the requester must establish more than a bare suspicion in order to obtain disclosure." *Favish*, 541 U.S. at 174. "Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.* This is because "allegations of misconduct are easy to allege and hard to disprove." *Id.* at 175. Accordingly, an agency may withhold identifying information of private individuals appearing in its files "unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'" *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991)).

Here, the private interest is the law enforcement officers, government employees, and third-party individuals' interest in the nondisclosure of their identifying information. The redaction of their identifying information by the DEA is a typical application of Exemption 7(C). *See, e.g., Grant Cent. P'ship Inc. v. Cuomo*, 166 F.3d 473, 485 (2d Cir. 1999). DiGirolamo has made a number of allegations of misconduct such as stating that heroin was improperly imported from Pakistan by a DEA agent. *See, e.g.,* Ex. D at 4-5. But these allegations are speculative and unsupported, and thus, do not rise above the level of bare suspicion. *See Wood v. FBI*, 432 F.3d 78, 89 (2d Cir. 2005) (finding that FBI investigators' interest in nondisclosure of their identities

8

substantially outweighed the public interest in disclosure where requester's "evidence of government wrongdoing is unpersuasive"). Thus, the DEA properly invoked Exemption 7(C).

   B. *Exemption 7(D)*

The threshold inquiry under Exemption 7(D) is "whether the particular *source* spoke with an understanding that the communication would remain confidential," rather than whether the type of document at issue is typically treated as confidential. *Grand Cent. P'ship*, 166 F.3d at 486 (quoting *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993)). In accordance with policy, the DEA made express assurances to its five confidential sources that their information will be held as confidential to the fullest extent possible. *See* Am. Myrick Decl. ¶ 39. DiGirolamo's assertion that the identities of these individuals have since become publicly known, true or not, is irrelevant to the analysis. *See Ferguson v. FBI*, 957 F.2d 1059, 1068 (2d Cir. 1992). Thus, the DEA properly invoked Exemption 7(D).

   C. *Exemption 7(E)*

With Exemption 7(E), a court simply determines if disclosure would reveal how law enforcement officials go about investigating a crime. *See Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010). According to the declaration, the DEA withheld Geo-Drug Enforcement ("G-DEP") identifiers, which are a part of the DEA's internal system of developing criminal activity information and intelligence and relate solely to internal DEA investigative procedures. Am. Myrick Decl. ¶ 41. The codes are assigned to all DEA cases at the time the case file is opened and indicate the classification of the violator(s), the types and amount of suspected drugs involved, the priority of the investigation, and suspected location and scope of criminal activity. Accordingly, the G-DEP identifiers relate to techniques and procedures for law enforcement investigations, and as such, courts have

routinely held their nondisclosure proper. *See, e.g., Ortiz v. U.S. Dep't of Justice*, 67 F. Supp. 3d 109, 123 (D.D.C. 2014). The Court upholds the DEA's invocation here.

D. *Exemption 7(F)*

Here, the exemption applies "where the safety of the individual in question would be jeopardized if his or her identity were revealed." *Garcia v. U.S. Dep't of Justice, Office of Information and Privacy*, 181 F. Supp. 2d 356, 378 (S.D.N.Y. 2002). The DEA invoked this exemption in withholding the identifying information of DEA law enforcement personnel, DEA Special Agents (and supervisors), other law enforcement personnel, and confidential sources. Am. Myrick Decl. ¶¶ 41, 44-55. Myrick explains that the release of such information would significantly increase the risk of violence to law enforcement personnel and others, who investigate or provide information about participants in the illegal trade, and in the past the release of such information tending to identify such individuals has resulted in violence. *Id.* ¶ 41. Thus, courts have routinely upheld the exemption to protect information identifying law enforcement officers and others. *See, e.g., Garcia*, 181 F. Supp. 2d at 378. Given DiGirolamo's crime of conviction, his alleged connection to organized crime, and his prior threats to the officers involved, Byars Decl. Exs. A at 10-11 and C at 14-16, the application of the exemption is especially appropriate.

E. *Fee Waiver*

The DEA denied DiGirolamo a fee waiver and required him to pay fees for further activity on his request after he exhausted his search time. Under FOIA, agencies may charge requesters for the costs of searching, duplicating, and reviewing records, but also may waive or reduce fees where "[1] disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government

10

and [2] is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). It is not disputed that DiGirolamo is not a commercial requester, which then leaves only the issue of whether the public interest is met by disclosure. The Court finds that the DEA properly found that the public interest prong was not met.

A district court reviews an agency's denial of a fee waiver *de novo* and is limited to the record before the agency. 5 U.S.C. § 552(a)(4)(A)(vii); *Carney*, 19 F.3d at 814. The requester has the burden to demonstrate that disclosure is in the public interest. *Carney*, 19 F.3d at 814. Fee waiver requests "must be based on more than conclusory allegations." *Ferrigno v. U.S. Dep't of Homeland Sec.*, No. 09 Civ. 5878, 2011 WL 1345168, at *5 (S.D.N.Y. Mar. 29, 2011) (internal quotations marks omitted). In determining the public interest requirement, it is relevant to "consider the subject matter of the requests and the ability of the requester to disseminate the information." *Carney*, 19 F.3d at 814. To elaborate, courts consider: (1) whether the records concern identifiable operations or activities of the government, with a connection that is direct and clear, not remote or attenuated; (2) whether the disclosure is *meaningfully informative* about those operations or activities; and (3) whether disclosure will contribute to the understanding of a reasonably broad audience of persons in the subject, as opposed to the requester's own understanding, which factors in the requester's expertise in the subject area as well as his intent to effective convey the information to the public. *See* 28 C.F.R. 16.10(k)(2)(i)-(iii).

As stated before, DiGirolamo argues that he is entitled to a fee waiver because disclosure will reveal government misconduct. The allegations of such misconduct are purely conclusory, and therefore, insufficient. *See Ferrigno*, 2011 WL 1345168, at *6; *cf. Wood v. FBI*, 432 F.3d 78, 89 (2d Cir. 2005) (explaining that "a presumption of legitimacy attends government actions that may not be overcome on the basis of unsupported allegations").

Moreover, the subject matter of DiGirolamo's FOIA requests reveals that the true purpose of the requests is not to benefit the public, but to help himself. DiGirolamo seeks the release of certain DEA records containing information about himself and specifically investigative reports. A convicted individual's "access to his personal investigative file primarily serves his own interest." *Bansal v. Drug Enforcement Admin.*, No. 06-3946, 2007 WL 551515, at *5 (E.D. Penn. Feb. 16, 2017). This is why courts have routinely denied requests for fee waivers by incarcerated individuals seeking records relating to their own criminal cases. *See Venkataram v. Office of Information Policy*, No. 09–6520, 2012 WL 4120438, at *2 (D.N.J. Sept. 18, 2012). Although there is incidental value to the public in disclosure, it is outweighed by the purpose of the requests, which is DiGirolamo's own interest. Therefore, the requested information does not "contribute significantly to public understanding of the operations or activities of the government." *See* 5 U.S.C. § 552(a)(4)(A)(iii).

DiGirolamo contends that he is entitled to a fee waiver since he plans to post online all the FOIA records he receives. Resp. to Summ. J. Mot. (ECF No. 63) at 3. However, this information was not before the DEA at the time of the request. DiGirolamo never made the assertion that he would disseminate the records online when he requested a fee waiver as the Court must review the DEA's denial of a fee waiver based on the record before the agency at the time the decision was made. *See Carney*, 19 F.3d at 814; *Larson v. CIA*, 843 F.2d 1481, 1483 (D.C. Cir. 1988) (holding that information not before the agency "could not be considered by the district court").

For the reasons just stated, the DEA did not have any obligation to search or process additional documents about DiGirolamo due to his failure to pay the related fees and the proper denial of his fee waiver request.

II.     DiGirolamo's Request for Release of Records Relating to Khan and Jan

In withholding any records responsive to DiGirolamo's request regarding Khan and Jan, the DEA invoked Exemptions 6 and 7(C). Although the statutory definitions differ somewhat, both exemptions deal with "unwarranted invasion of personal privacy." Exemption 7(C) is broader and requires a lesser showing of the likelihood of intrusion into personal privacy. *Gelb v. U.S. Dep't of Homeland Sec.*, 15 Civ. 6495, 2017 WL 4129636, at *5 (S.D.N.Y. Sept. 15, 2017). Under these facts, the balancing analysis is the same, but the Court will focus on 7(C).

As noted earlier, the records here are "compiled for law enforcement purposes." The Supreme Court has held "as a categorical matter" that a "third party's request for law enforcement records or information about a public citizen can reasonably be expected to invade that citizen's privacy" and that such records may not be disclosed in the absence of a cognizable public interest. *Reporters Comm.*, 489 U.S. at 780. For the reasons set forth in Section I.A. of this opinion, DiGirolamo has failed to identify a cognizable public interest in disclosure. As noted earlier, his speculative allegations of illegal activity by the Government are unavailing.

DiGirolamo argues that he entitled to these disclosures under the public domain or waiver doctrine because he has submitted "official documents pertaining to both third party subjects either individually or collectively." ECF No. 46. Under the public domain doctrine, an FOIA exemption does not apply "if identical information is otherwise in the public domain." *Inner City Press/Cmty. on the Move v. Bd. of Governors of the Fed. Reserve Sys.*, 463 F.3d 239, 244 (2d Cir. 2006); *see also Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) ("Under our public-domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record."). The Supreme Court has circumscribed the doctrine to information that is "freely available." *Inner City Press*,

13

463 F.3d at 244 (citing *Reporters Comm.*, 489 U.S. at 764). "Freely available" means readily accessible or easily searchable. *See Unidad Latina en Accion v. U.S. Dep't of Homeland Sec.*, 253 F.R.D. 44, 54 (D. Conn. 2008) (citing *Inner City Press*, 463 F.3d at 251-52). The requester has the burden of production on the issue of whether the sought after documents are publicly available. *Inner City Press*, 463 F.3d at 245. To meet his burden, the requester must point "to specific information in the public domain that appears to duplicate that being withheld." *Id.* at 249 (quoting *Afshar v. U.S. Dep't of State,* 702 F.2d 1125, 1130 (D.C. Cir. 1983). "Prior disclosure of similar information does not suffice; instead, the *specific* information sought by the plaintiff must already be in the public domain by official disclosure." *Wolf v. CIA,* 473 F.3d 370, 378 (D.C. Cir. 2007) (emphasis in original).

DiGirolamo fails to meet his burden by not providing any details about how he obtained the purported DEA materials or how these materials were disclosed and to whom. His possession of the DEA materials does not indicate that they are publicly available or even in the public domain. The DEA has indicated that the bulk of these materials seem to resemble the types of documents contained in DEA investigative files. Def. Mem. Supp. Summ. J. (ECF No. 53) at 23. If DiGirolamo received these materials during his criminal case as part of any mandated disclosure, then it would reinforce the conclusion that the public domain doctrine is inapplicable. *See Cottone*, 193 F.3d at 556 (holding that mandatory disclosure of records to defendant in criminal cases does not place those records in the public domain); *Bullock v. FBI*, 557 F. Supp. 2d 75, 79 (D.D.C. 2008) (DEA investigative reports "are not in the public domain even if the government produced them as part of its pretrial obligations."). As such, DiGirolamo cannot invoke the public domain doctrine for documents relating to Khan and Jan. Accordingly, the DEA's categorical withholding of their records was proper.

14

III. DiGirolamo's Request for Release of Records Relating to Lucy

The DEA has not taken any further action with regards to DiGirolamo's request for documents relating to Lucy. The DEA argues that such action is justified because DiGirolamo has failed to take any further administrative steps after being apprised of the fee (*see* Am. Myrick Dec. Ex. K) and thus his request is unexhausted. The Court agrees.

"Exhaustion does not occur until the required fees are paid or an appeal is taken from the refusal to waive fees." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 66 (D.C. Cir. 1990). Under DOJ regulations, an agency will consider a request not to have been received until a requester responds to a notice that fees of more than $25.00 are likely to be charged. 28 C.F.R. § 16.10(e). The reason for this is so the requester has an opportunity to reformulate the request and reduce the cost. *See id.* DiGirolamo did not respond to the fee estimate, so it follows that he neither paid the required fees nor appealed the refusal by the DEA to waive fees. Accordingly, his request regarding Lucy is unexhausted, and the DEA properly took no further action on the request.

IV. DiGirolamo's Request for Discovery

In his response to the renewed summary judgment motion, DiGirolamo argues that discovery is warranted before a Court can consider a summary judgment motion. Resp. Summ. J. Mot. (ECF No. 63) at 8. In the context of FOIA litigation, DiGirolamo is mistaken.

"Affidavits submitted by an agency are accorded a presumption of good faith; accordingly, discovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (internal citation omitted). If the agency satisfies that burden, then in order to justify discovery, "the plaintiff

must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate." *Id.* (citation omitted). Myrick's declaration is reasonably detailed and submitted in good faith. DiGirolamo has made no showing of bad faith on the part of the DEA. Accordingly, discovery is not warranted, and DiGirolamo's request is denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

**SO ORDERED.**

**Dated:** **New York, New York**
**September 29, 2017**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**